# In the United States Court of Federal Claims

No. 18-1081L
(Filed: May 17, 2019)
NOT FOR PUBLICATION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| WHITELAND HOLDINGS, L.P. and FRAZER/EXTON DEVELOPMENT, L.P., <br><br> Plaintiffs, <br><br> v. <br><br> THE UNITED STATES, <br><br> Defendant. | Motion for Reconsideration; RCFC 59(a)(1); Failure to Raise Argument; Rearguing Original Position; Motion for Relief; RCFC 60(b); Legal Error; Extraordinary Circumstances |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**OPINION AND ORDER**

Plaintiffs Whiteland Holdings, L.P. ("Whiteland") and Frazer/Exton Development, L.P. ("Frazer/Exton") move, pursuant to Rule 59(a)(1) of the Rules of the United States Court of Federal Claims ("RCFC"), for reconsideration of the court's February 8, 2019 opinion and order dismissing their claim for lack of subject-matter jurisdiction or, alternatively, relief from that order pursuant to RCFC 60(b). For the reasons set forth below, the court denies Whiteland and Frazer/Exton's motion.

## I. BACKGROUND

Whiteland and Frazer/Exton allege that the federal government's operations and disposal methods at the Foote Mineral Superfund Site resulted in environmental contamination, effecting a taking without just compensation in contravention of the Fifth Amendment to the United States Constitution. A description of the history of the site—including its contamination, remediation, and chain of ownership—and procedural history of this case are provided in the court's February 8, 2019 ruling and need not be repeated herein. See Whiteland Holdings, L.P. v. United States, 141 Fed. Cl. 702, 705-09 (2019).

As relevant to the instant motion, Frazer/Exton

> completed the investigation, removal, and/or remediation of the Site in 2011. . . . On September 11, 2017, pursuant to Pennsylvania law, Whiteland executed an Environmental Covenant in favor of Frazer/Exton. The [United States Environmental Protection Agency ("EPA")] approved the Environmental

>Covenant nine days later.  [T]he Environmental Covenant contains
>. . . activity and use limitations[] which the then current owner of
>the Property, and its tenants, agents, employees and other persons
>under its control, shall abide by.  . . .

Id. at 708 (citation and internal quotation marks omitted) (third brackets in original).  In response to defendant's motion to dismiss, Whiteland and Frazer/Exton contended that their claim did not accrue until they "'could fully take account of their damages due to the consequences of Defendant's actions' and that their damages 'would have been merely speculative and not quantifiable or present until the September 11, 2017 Environmental Covenant was executed.'"  Id. at 711 (brackets omitted).  The court explained that Whiteland and Frazer/Exton's claim "accrued when they knew or should have known that the alleged contamination by the United States effected a permanent taking, not when they became aware of the full extent of the damage."  Id. (citation, internal quotation marks, and brackets omitted).  The court concluded that it "need not determine the specific date on which Frazer/Exton and Whiteland were reasonably aware of the permanent nature of the alleged taking" because they "clearly had such knowledge by no later than 2011, when Frazer/Exton completed the required remediation."  Id. at 713.  Because the original complaint was not filed until July 24, 2018, the court determined that it lacked subject-matter jurisdiction over Whiteland and Frazer/Exton's claim and dismissed the complaint.  Id.

In their present motion, Whiteland and Frazer/Exton aver that the court correctly set forth the legal standards that apply to an environmental takings action, but committed "a manifest error of law" in its determination of the accrual date of their claim.  Mot. Recons. 1, ECF No. 14.  According to Whiteland and Frazer/Exton, such legal error justifies reconsideration of—or alternatively, relief from—the court's dismissal order.  Id.  At bottom, Whiteland and Frazer/Exton argue that they "were unable to determine the extent of the taking, its permanency or lack thereof, until the [EPA] imposed the land use restrictions contained in the 2017 Environmental Covenant."  Id. at 3.  They explain that "the EPA's institution of land use restrictions, based upon the effectiveness of the remedial actions, . . . dictates the permanency of the taking and determines the proper accrual date."  Id.

At the court's direction, defendant filed a response to Whiteland and Frazer/Exton's motion,[1] after which Whiteland and Frazer/Exton filed a reply.  The parties did not request oral argument, and the court deems it unnecessary.  Whiteland and Frazer/Exton's motion is therefore ripe for adjudication.

---

[1] On the cover page of its response, defendant did not list Whiteland as a plaintiff and notes that it "will retain the original caption until this Court authorizes a change."  The court did so on October 19, 2018.  Order 1-2, Oct. 19, 2018, ECF No. 9.

## II.  MOTION FOR RECONSIDERATION

### A.  Standard of Review

A motion for reconsideration is a request for "extraordinary" relief and is not an avenue for a dissatisfied party to simply relitigate the case. Caldwell v. United States, 391 F.3d 1226, 1235 (Fed. Cir. 2004); Four Rivers Invs., Inc. v. United States, 78 Fed. Cl. 662, 664 (2007); Fru-Con Constr. Corp. v. United States, 44 Fed. Cl. 298, 300 (1999), aff'd per curiam, 250 F.3d 762 (Fed. Cir. 2000) (unpublished table decision).  Thus, such a motion does not allow a party to raise arguments that it failed to raise previously or reassert arguments that have already been considered.  Four Rivers Invs., 78 Fed. Cl. at 664.  Pursuant to RCFC 59(a)(1), the court "may grant a motion for reconsideration when there has been an intervening change in the controlling law, newly discovered evidence, or a need to correct clear factual or legal error or prevent manifest injustice."  Biery v. United States, 818 F.3d 704, 711 (Fed. Cir. 2016) (quoting Young v. United States, 94 Fed. Cl. 671, 674 (2010)).  A decision on a motion for reconsideration is within the discretion of the trial court.  See Entergy Nuclear FitzPatrick, LLC v. United States, 711 F.3d 1382, 1386 (Fed. Cir. 2013) (explaining that a decision on a motion for reconsideration is reviewed on appeal for abuse of discretion).

### B.  Analysis

Whiteland and Frazer/Exton do not allege that there has been an intervening change in law since February 8, 2019, nor is the court aware of any.  Further, they do not rely on any newly discovered evidence.  Rather, Whiteland and Frazer/Exton posit that the court must reconsider its ruling to prevent manifest injustice.  Specifically, they contend that the court erred in its analysis of when their claim accrued due to misunderstanding their arguments.

The instant motion boils down to an attempt by Whiteland and Frazer/Exton to reargue their original position pertaining to this court's jurisdiction.  To the extent that the motion raises new arguments, there is no reason that those new arguments could not have been asserted previously and thus they are waived.  Accordingly, Whiteland and Frazer/Exton's motion is meritless.  A motion for reconsideration "is not intended . . . to give an unhappy litigant an additional chance to sway the court," and a party cannot prevail "by raising an issue for the first time on reconsideration" when that issue could have been litigated previously.  Matthews v. United States, 73 Fed. Cl. 524, 525 (2006) (internal quotation marks omitted) (collecting cases).

In any event, Whiteland and Frazer/Exton have not established that the court improperly determined when their claim accrued.  The "activity and use limitations" contained in the September 11, 2017 Environmental Covenant are as follows:[2]

---

[2] A complete copy of the 2017 Environmental Covenant, which is publicly available, was attached as Exhibit 2 to Whiteland and Frazer/Exton's response to defendant's motion to dismiss.  See ECF No. 10-2.

      a. Future residential development is prohibited on the Quarry Area.

      b. No alterations of any kind in, to, or about any portion of the Property inconsistent with this Environmental Covenant shall be made, allowed or suffered to be made, unless the then current owner has received prior written approval to do so from EPA.

      c. Any on-site excavations in the Quarry Area that would disturb the integrity of the Cap System are prohibited, unless the then current owner has received prior written approval to do so from EPA.

      d. The installation or building of any structures on the Quarry Area is prohibited, unless the then current owner has received prior written approval to do so from EPA.

      e. Disturbing the vegetative growth that stabilizes the Cap System is prohibited, unless the then current owner has received prior written approval to do so from EPA.

      f. The then current owner shall provide the Holder, EPA and the Pennsylvania Department of Environmental Protection . . . with sixty (60) days advance notice of any proposal to use or perform any work on the Quarry Area.

Envtl. Covenant ¶ 5. The covenant also included a provision allowing a "passive solar field" to be "installed on the Quarry Area" in accordance with the approval and notice requirements of the activity and use limitations. Id. ¶ 4.

      However, as defendant observes, "the use restrictions in the 2017 Environmental Covenant were identified in the 2008 Consent Decree." Def.'s Opp'n Mot. Recons. 1. Pursuant to that decree, which was entered on July 25, 2008, in a federal district court action, Frazer/Exton agreed to "refrain from using the Site . . . in any manner that would interfere with or adversely affect the implementation, integrity, or protectiveness of the remedial measures to be performed."[3] Consent Decree ¶ 26(b), United States v. Frazer Exton Dev. LP, No. 07-2666 (E.D. Pa. July 25, 2008). Frazer/Exton also agreed, as part of the consent decree, to certain use restrictions that had been described in the EPA's March 31, 2006 Record of Decision:

---

      [3] Defendant attached excerpts from the consent decree, which is publicly available, as exhibits to its motion to dismiss and to its opposition to the pending motion for reconsideration.

> a prohibition of future residential development on capped areas of the North and South Quarries at the Site, and other restrictions, including [but] not limited to:
>
> > (i) provision of notice to current and future owners of the Site regarding the impacted groundwater and soil contamination and quarry fill left at the conclusion of the remedial action,
> >
> > (ii) prohibition of any activity that could potentially damage or interfere with the selected remedy, and
> >
> > (iii) establishment of a Groundwater Management Zone for the downgradient areas impacted or potentially impacted by contaminated groundwater . . . .

Id. Further, Frazer/Exton agreed to

> execute and record . . . an easement, running with the land, that: (i) grants a right of access for the purpose of conducting any activity related to this Consent Decree . . . and (ii) grants the right to enforce the land/water use restrictions listed in Paragraph 26(b) of this Consent Decree . . . .

Id. ¶ 26(c).

The July 25, 2008 consent decree contemplated that Frazer/Exton might not own the Foote Mineral Superfund Site in perpetuity:

> If the Site, or any other property where access and/or land/water use restrictions are needed to implement this Consent Decree, is owned or controlled by persons other than [Frazer/Exton], [Frazer/Exton] shall use best efforts . . . to secure from such persons:
>
> > a. an agreement to provide access thereto for [Frazer/Exton], as well as for the United States on behalf of EPA, and the Commonwealth [of Pennsylvania], as well as their representatives (including contractors), for the purpose of conducting any activity related to this Consent Decree . . . ;
> >
> > b. an agreement, enforceable by [Frazer/Exton] and the United States, to refrain from using the Site, or such other property, in any manner that would interfere with or adversely affect the implementation, integrity, or

-5-

>>protectiveness of the remedial measures to be performed pursuant to this Consent Decree. Such restrictions include, but are not limited to those restrictions described in Paragraph 26; and
>
>> c. the execution and recordation . . . of an easement, running with the land, that: (i) grants a right of access for the purpose of conducting any activity related to this Consent Decree . . . and (ii) grants the right to enforce the land/water use restrictions listed in Paragraph 26(b) of this Consent Decree . . . .

Id. ¶ 27. As relevant here, the 2017 Environmental Covenant—which was executed pursuant to the Pennsylvania Uniform Environmental Covenants Act, and specifically referenced both the record of decision and consent decree, Envtl. Covenant 1, ¶ 4—merely effectuated these provisions. See 27 Pa. Stat. and Cons. Stat. Ann. § 6502, Uniform Law Cmt. 1 (West 2008) ("[I]n a major environmental response project where the administrative process was conducted by either a federal or state agency, the activity and use limitations would generally be identified in the record of decision and then implemented in the environmental covenant pursuant to this Act.").

In short, because the September 11, 2017 Environmental Covenant contained the same land use restrictions that were present in the July 25, 2008 consent decree, Whiteland and Frazer/Exton's position regarding when they became aware of the permanency of the alleged taking is untenable. Therefore, there has been no manifest injustice because the court did not err in concluding that Whiteland and Frazer/Exton's claim accrued no later than 2011.

### III. MOTION FOR RELIEF FROM FINAL JUDGMENT OR ORDER

As noted above, Whiteland and Frazer/Exton seek, as an alternative to reconsideration, relief from the court's dismissal order under RCFC 60(b).

### A. Standard of Review

Pursuant to RCFC 60(b), the court "may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . (1) mistake, inadvertence, surprise, or excusable neglect; . . . or (6) any other reason that justifies relief." As with reconsideration, a decision on an RCFC 60(b) motion for relief lies within the discretion of the trial court. See Progressive Indus., Inc. v. United States, 888 F.3d 1248, 1255 (Fed. Cir. 2018) (explaining that a decision on an RCFC 60(b) motion for relief is reviewed on appeal for abuse of discretion). A motion for relief "is not a permissible substitute for an appeal." Mendez v. United States, 135 Fed. Cl. 131, 133 (2017).

### B. Analysis

As explained above, the court did not err in determining that Whiteland and Frazer/Exton's claim accrued more than six years prior to the date on which Frazer/Exton initiated the instant lawsuit. In other words, there has been no mistake. Further, Whiteland and Frazer/Exton do not contend that there has been "inadvertence, surprise, or excusable neglect," or any of the circumstances listed in RCFC 60(b)(2) through (5). Therefore, the court's evaluation of their alternative motion for relief under RCFC 60(b) focuses on whether there is "any other reason that justifies relief."

Relief under RCFC 60(b)(6)—which has been described as a "'catch-all' provision"—is available "only in 'extraordinary circumstances.'" Cyios Corp. v. United States, 124 Fed. Cl. 107, 113 (2015) (quoting Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 863-64 (1988)). Examples of such circumstances include ex parte proceedings, "unusual combinations of health and financial difficulties," "gross negligence or severe misconduct by counsel," and fraud. Id. However, a court's legal error does not rise to the level of extraordinary circumstances sufficient to justify relief under RCFC 60(b)(6). Id. (citing Brown v. United States, 80 F. App'x 676, 679 (Fed. Cir. 2003) (unpublished decision)). Because Whiteland and Frazer/Exton do not allege any circumstances beyond their assertions regarding legal error in support of their request for relief under RCFC 60(b)(6), their motion must be denied. Their recourse, if any, is via appellate review.

### IV. CONCLUSION

The court did not err in determining that Whiteland and Frazer/Exton's claim accrued more than six years prior to the date on which Frazer/Exton filed suit. There has been no intervening change in the law, manifest injustice, clear factual or legal error, or other extraordinary circumstances justifying reconsideration or relief from the court's dismissal order. Whiteland and Frazer/Exton's motion is, in essence, an attempt to advance arguments that it previously had the opportunity to assert and, in any event, are meritless.

Therefore, for the foregoing reasons, the court **DENIES** Whiteland and Frazer/Exton's motion for reconsideration and **DENIES** their alternative motion for relief from the court's prior order.

**IT IS SO ORDERED.**

s/ Margaret M. Sweeney<br>
MARGARET M. SWEENEY<br>
Chief Judge